**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **CARL TATE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:16-cv-00092-NJR** |
| | ) | |
| **WEXFORD HEALTH** | ) | |
| **SOURCE INC.,** | ) | |
| **LOUIS SHICKER,** | ) | |
| **MELVIN HINTON,** | ) | |
| **JOHN BALDWIN,** | ) | |
| **DOUGLAS,** | ) | |
| **SANTOS,** | ) | |
| **MARK AARON, and** | ) | |
| **EMILY PRATER,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM AND ORDER</u>

**ROSENSTENGEL, District Judge:**

Plaintiff Carl Tate is currently incarcerated at Centralia Correctional Center ("Centralia"), although she was previously incarcerated at Western Illinois Correctional Center ("Western"). (Doc. 1 at 5-6.) Proceeding *pro se*, Tate has filed a complaint pursuant to 42 U.S.C. § 1983 against Wexford Health Source Inc. ("Wexford") and employees of Western, Centralia, and the Illinois Department of Corrections ("IDOC"). (*Id.*) She seeks monetary and injunctive relief. (*Id.* at 19-20.)

This matter is now before the Court for a preliminary review of Tate's complaint pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court shall review a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a government entity." During this preliminary review under § 1915A, the Court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint," if the complaint "is

frivolous, malicious, or fails to state a claim on which relief may be granted" or if it "seeks

monetary relief from a defendant who is immune from such relief."

## Background

Tate's complaint concerns events that occurred while she was incarcerated at Western

and Centralia (where she is currently imprisoned). Tate is anatomically male, but identifies as a

female, and alleges that she has been diagnosed as transgender by several psychiatrists.[1] (*Id.* at

6.) She also claims that several health care professionals have diagnosed her as suffering from

post-traumatic stress disorder, anxiety, depression, and gender dysphoria.[2] Gender dysphoria,

according to the complaint, is recognized by the *Diagnostic and Statistical Manual of Mental

Disorders*. (*Id.* at 5.) Persons suffering from gender dysphoria experience strong and persistent

cross-gender identification and discomfort with their biological sex. (*Id.* at 5-6.) Tate states that

the approved treatment for dysphoria patients consists of hormone therapy, "real life experience

of living as a member of the opposite sex," and sex reassignment surgery. (*Id.* at 6-7.)

In 2014, Tate was incarcerated at Western. (*Id.* at 7.) Defendant Ms. Douglas was a

member of the mental health staff there. (*Id.* at 7-8.) Tate asked Ms. Douglas if she could be seen

by a specialist for the purpose of receiving sex reassignment surgery. (*Id.* at 8.) Ms. Douglas

allegedly told Tate that if she wanted such surgery, she should not have come to prison. (*Id.*) She

also told Tate that Wexford does not want to waste their money on such treatment. (*Id.*) Ms.

Douglas also allegedly refused to "put [Tate] in for laser hair removal," and to refer her to a

trained mental health professional for treatment of her gender dysphoria. (*Id.*)

The balance of Tate's complaint concerns her time in Centralia. Defendant Mark Aaron is

Centralia's Prison Rape Elimination Act coordinator. (*Id.* at 9.) Tate asked Aaron many times

---

[1] The Court therefore refers to Tate as a female.
[2] She attempted suicide in January 2013 and on April 18, 2013. (*Id.*)

that she be permitted to undergo sex reassignment surgery. (*Id.*) Aaron allegedly told Tate, however, that Wexford and IDOC do not allow inmates to receive sex reassignment surgery, and he refused to refer her to any outside specialist. (*Id.*)

On July 25, 2015, Defendant Emily Prater, a mental health staff member, referred Tate to psychiatrist Dr. Rodos. (*Id.* at 9-10.) Dr. Rodos told Tate that he would send her request for sex reassignment surgery to the prison's medical director, Defendant Dr. Santos. (*Id.* at 10.) On August 7, 2015, Dr. Rodos informed Tate that he had also forwarded Tate's request to outside specialists (including to physicians at the University of Illinois at Springfield). (*Id.*) He also told Tate he would speak with Defendant Aaron about the latter's refusal to submit Tate's request to outside specialists. (*Id.*)

The complaint alleges that Tate was seen by Dr. Santos in May, July, and October 2015. (*Id.* at 11.) Tate told Dr. Santos that, although she had been taking hormone medication, she was suffering from anxiety and other disorders, and that she wished to be seen by a physician who specializes in gender dysphoria for the purpose of eventually undergoing sex reassignment surgery. (*Id.*) Dr. Santos told her that IDOC does not pay for such treatment and that she will have to wait until she is released from prison before she is able to receive reassignment surgery. (*Id.*)[3]

As a result of the above facts, Tate suffers from fits of crying, severe panic/anxiety attacks, hypervigilance, depression, nightmares, and self-mutilation. (*Id.* at 6.)

### Discussion

To facilitate the management of future proceedings, and in accordance with the objectives of Federal Rules of Civil Procedure 8 and 10, the Court finds it appropriate to break

---

[3] Tate states that she has also requested from all of the above defendants laser hair removal, female underwear, and makeup. (*Id.* at 12.)

the claims in Tate's *pro se* complaint into numbered counts, as shown below. The parties and the Court will use these designations in all pleadings and orders, unless otherwise directed by the Court. The designation of these counts does not constitute an opinion as to their merit.

**COUNT 1:** The Defendants were deliberately indifferent to Tate's medical needs in violation of her Eighth Amendment rights.

**COUNT 2:** The Defendants subjected Tate to the intentional infliction of emotional distress.

**COUNT 3:** The Defendants violated the Equal Protection Clause of the Fourteenth Amendment by refusing to allow Tate to see outside specialists to treat her gender dysphoria and perform sex reassignment surgery.

**COUNT 4:** Defendants Wexford, Shicker, Hinton, and Baldwin's failure to hire and train medical health staff members to treat inmates with gender dysphoria and to refer such patients to outside specialists to undergo sex reassignment therapy is a violation of the Eighth Amendment.

**COUNT 5:** IDOC, as represented by Director Baldwin, violated the Americans with Disabilities Act when it refused to provide Tate with access to certain medical services and programs.

**Count 1** survives threshold review as to Douglas, Aaron, and Santos. The Eighth Amendment protects prisoners from cruel and unusual punishment. *See* U.S. CONST. amend. VIII. The Supreme Court has held that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2006) (per curiam). To state an Eighth Amendment claim for deficient medical care, prisoners must establish that (1) the medical condition was objectively serious, and (2) the state officials acted with deliberate indifference to the prisoner's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001). Gender dysphoria is a serious medical need. *Meriwether v. Faulkner*, 821 F.2d 408, 411-13 (7th Cir. 1987). Whether Tate has stated a valid

Eighth Amendment claim, therefore, turns on whether she has alleged facts indicating the Defendants acted with deliberate indifference to her health or safety.

Here, Tate alleges that she informed Douglas, Aaron, and Dr. Santos about her diagnosis and her sufferings, and yet the most any of them did for her was to tell her that she would have to wait until she was released from prison to pursue treatment. Given these allegations, further factual development is necessary to determine whether Douglas, Aaron, and Dr. Santos are liable under the Eighth Amendment for deliberate indifference.

Count 1 also may proceed at this time against Defendant Wexford. Wexford is a corporate entity and is therefore treated as a municipality for purposes of § 1983. *See Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 766 n.6 (7th Cir. 2002). "[T]o maintain a § 1983 claim against a municipality, [a plaintiff] must establish the requisite culpability (a 'policy or custom' attributable to municipal policymakers) and the requisite causation (the policy or custom was the 'moving force' behind the constitutional deprivation)." *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002). Here, Tate alleges that Douglas, Aaron, and Dr. Santos were deliberately indifferent to her serious medical needs due to Wexford's policy against allowing patients with gender dysphoria from being examined for their fitness for sex reassignment surgery and against performing sex reassignment surgery on such patients or allowing them to receive reassignment surgery. Further factual development is necessary, therefore, to determine whether Wexford acted in violation of the Eighth Amendment.

Count 1 may not proceed, however, as to Prater. The most the complaint says of Defendant Prater is that she "sent Plaintiff to see Psychiatrist Dr. Rodos on 7-25-15 for submission for sex reassignment surgery." (Doc. 1 at 10.) This allegation does not indicate that

Prater was deliberately indifferent to Tate's illness. Therefore, Defendant Prater is dismissed without prejudice.

Count 1 may not proceed as to Shicker, Hinton, and Baldwin, either. Tate's complaint does not indicate that these individuals had personal involvement in the events about which she complains. Instead, she seems to wish to hold them liable under a theory of *respondeat superior*. There is no general *respondeat superior* liability under 42 U.S.C. § 1983, however, and "public employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). Because Tate does not allege that Shicker, Hinton, or Baldwin were even aware of her illness, much less that they were deliberately indifferent to her medical needs, they are dismissed without prejudice.

**Count 2**, which claims that the Defendants are liable for the tort of intentional infliction of emotional distress, does not survive preliminary review. Where a district court has original jurisdiction over a civil action such as a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho–Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008). "A loose factual connection is generally sufficient." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (citing *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995)).

Under Illinois law, a plaintiff claiming intentional infliction of emotional distress must demonstrate that the defendant intentionally or recklessly engaged in "extreme and outrageous conduct" that resulted in severe emotional distress. *Somberger v. City of Knoxville, Ill.,* 434 F.3d 1006, 1030 (7th Cir. 2006); *see Lopez v. City of Chi.,* 464 F.3d 711, 720 (7th Cir. 2006). The tort has three components: (1) the conduct involved must be truly extreme and outrageous; (2) the

actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress. *McGrath v. Fahey,* 533 N.E.2d 806, 809 (Ill. 1988). To be actionable, the defendant's conduct "must go beyond all bounds of decency and be considered intolerable in a civilized community." *Honaker v. Smith,* 256 F.3d 477, 490 (7th Cir. 2001) (citing *Kolegas v. Heftel Broad. Corp.,* 607 N.E.2d 201, 211 (Ill. 1992); *Campbell v. A.C. Equip. Servs. Corp., Inc.,* 610 N.E.2d 745, 749 (Ill. App. 1993)). Whether conduct is extreme and outrageous is judged on an objective standard, based on the facts of the particular case. *Honaker,* 256 F.3d at 490.

Here, Tate has not alleged that any of the Defendants intended to inflict her with severe emotional distress or that there was a high probability that their conduct would inflict severe emotional distress, much less that their conduct went "beyond all bounds of decency." Therefore, Count 2 is dismissed without prejudice.

**Count 3** also fails to survive preliminary review. The Equal Protection Clause of the Fourteenth Amendment requires all persons "similarly situated" to be treated alike by state actors. *See City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). Tate must therefore show that she was similarly situated to and treated differently from other inmates in order to adequately allege an equal protection violation. Tate bases her equal protection claim on her status as a transsexual. She alleges that the "[s]imilarly situated inmates with medical/mental health conditions are provided[,] if [necessary,] outside health care assessment with a professional trained in that field[,] [e]ven if surgery [is] needed." (Doc. 1 at 16.) But she presents no evidence of other inmates who have been treated differently in similar circumstances. Accordingly, Count 3 is dismissed without prejudice.

Tate may proceed at this time as to **Count 4** as to Wexford, Shicker, Hinton, and Baldwin. A plaintiff states a claim for failure to train personnel where that failure "amounts to deliberate indifference to the rights of persons with whom the [personnel] come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). The plaintiff must allege that the failure to train is the result of an official custom or policy of the corporation that she is suing. *See id.* at 389. A custom or policy may exist where the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the deficient training can be inferred as a deliberate slight. *Id.* at 390. Further, if a defendant directed or gave knowing consent to the conduct which caused a constitutional violation, that defendant has sufficient personal involvement to be responsible for the violation, even though that defendant has not participated directly in the violation. *Chavez v. Ill. State Police*, 251 F.3d 612, 652 (7th Cir. 2001); *McPhaul v. Bd. of Comm'rs of Madison Cnty.,* 226 F.3d 558, 566 (7th Cir. 2000). A defendant in a supervisory capacity may thus be liable for "deliberate, reckless indifference" where he or she has purposefully ignored the misconduct of his/her subordinates. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (discussing *Chavez,* 251 F.3d at 651 ("The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.")).

Tate alleges that Wexford and IDOC have a policy against examining patients with gender dysphoria as concerns their fitness to undergo sex reassignment surgery and against performing sex reassignment surgery on such patients or allowing them to receive reassignment surgery. Tate also alleges that, by Dr. Rodos's own admission, no one at Centralia is qualified to treat gender dysphoria. At this stage, the Court cannot discern whether Wexford, Shicker,

Hinton, or Baldwin is subject to liability under the above standards. Therefore, Count 4 may proceed against all of them.

Lastly, **Count 5** survives preliminary screening. Title II of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA") prohibit public entities from denying qualified individuals with disabilities the opportunity to participate in the services, programs, or activities of the public entity because of their disabilities. 42 U.S.C. § 12132; 29 U.S.C. § 794. The ADA and RA each create a private cause of action for damages against states for conduct that violates the Fourteenth Amendment. Tate alleges that she has been denied access to some of Centralia's medical service programs due to her disability. Based on her physical condition, she is arguably a qualified disabled person. *See* 42 U.S.C. § 12102(1); *see also Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999) (plaintiff was considered disabled under the ADA because her medication could not perfectly control her mental illness).

Title II abrogates state sovereign immunity at least for those claims that independently violate the Constitution. *United States v. Georgia*, 546 U.S. 151, 159 (2006); *Toeller v. Wis. Dep't of Corr.*, 461 F.3d 871, 874 (7th Cir. 2006). Tate does not name IDOC as a defendant in this case, however, the appropriate party in this case is the Director of IDOC, Defendant Baldwin, which Tate has named. Accordingly, Tate may proceed with her ADA and RA claims in Count 5 against Defendant Baldwin.

## Pending Motion

Tate has also filed a motion for appointment of counsel (Doc. 12). There is no constitutional or statutory right to appointment of counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). Yet federal district courts have discretion under 28 U.S.C. § 1915(e)(1) to request counsel to assist *pro se* litigants. *Id.* When presented with a

request to appoint counsel, the Court must make the following two inquiries: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).

Concerning the second step of the inquiry, "the difficulty of the case is considered against the plaintiff's litigation capabilities, and those capabilities are examined in light of the challenges specific to the case at hand." *Id.* at 655. From a legal standpoint, the litigation of any constitutional claim falls in the complex range. Even so, Tate's petition sufficiently articulates her claims, and based on this ability, this Court concludes that she appears to be competent to litigate her case on her own at this time. The Court is cognizant of the fact that Tate alleges she suffers from several mental illnesses, and future developments in this case may well alter the Court's decision. But at this early stage in the litigation, Tate's motion for appointment of counsel will be **DENIED** without prejudice. Tate may choose to re-file this motion at a later stage in the litigation.

## Disposition

**IT IS HEREBY ORDERED** that Plaintiff may proceed on **COUNT 1** against Defendants **DOUGLAS**, **AARON**, **SANTOS**, and **WEXFORD**. **COUNT 1** is **DISMISSED without prejudice** as to **PRATER**, **SHICKER**, **HINTON**, and **BALDWIN**.

Plaintiff may proceed with **COUNT 4** against Defendants **WEXFORD**, **SHICKER**, **HINTON**, and **BALDWIN**.

Plaintiff may proceed with C**OUNT** 5 against Defendant **BALDWIN**.

**COUNTS 2** and **3** are **DISMISSED without prejudice**. Accordingly, Defendant **PRATER** is **DISMISSED without prejudice**.

As for **COUNTS 1**, **4**, and **5** the Clerk of Court shall prepare for Defendants **DOUGLAS**, **AARON**, **SANTOS**, **WEXFORD**, **SHICKER**, **HINTON**, and **BALDWIN**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **DONALD G. WILKERSON** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **DONALD G. WILKERSON** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that her application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A). Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant was deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that she is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in her address; the Court will not independently investigate her whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  February 18, 2016**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**