IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CARL TATE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.3:16-cv-92-NJR-DGW |
| | ) | |
| WEXFORD HEALTH SOURCE, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge Nancy J. Rosenstengel pursuant to 28 U.S. C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the Motion for Temporary Restraining Order filed by Plaintiff, Carl Tate, on February 23, 2017 (Doc. 94). For the reasons set forth below and at the March 30, 2017 hearing, it is **RECOMMENDED** that the Motion be **DENIED** and that the Court adopt the following findings of fact and conclusions of law.

### FINDINGS OF FACT

Plaintiff, an inmate currently incarcerated at the Shawnee Correctional Center, is proceeding on various claims related to the denial of adequate treatment of her[1] medical conditions, including gender dysphoria (Doc. 14). Plaintiff's claims relate to her incarceration at Western Illinois and Centralia Correctional Centers (Doc. 87). On February 21, 2017, counsel was appointed for Plaintiff; however, before counsel could enter an appearance, Plaintiff filed the pending motion. In light of the nature of the allegations in the motion, a hearing was set for

---

[1] The Plaintiff in this action identifies as a female and the Court will address her as such.

March 30, 2017, after counsel entered an appearance and Defendants filed a response to the motion.

In her motion, filed a few days after her transfer to Shawnee CC and while she was housed in segregation, Plaintiff stated that she was having severe mental health issues related to her inability to take steps to transition from male to female (for example, shaving) and because she was single-celled (i.e. housed without a cellmate). She states that other inmates taunt and harass her, causing anxiety, obsessive compulsive activities, panic attacks, lack of appetite, suicidal thoughts, and night terrors, among other things. She also attempted suicide 6 days prior to filing the motion. She requests mental health care by an outside medical provider.

On the same day that Plaintiff filed her motion, it was brought to the attention of mental health care providers at Shawnee who assessed her mental state and made the determination to place her in crisis watch (Doc. 106-1, p. 2). During crisis watch, she was observed every 10 minutes to assure her safety and she was evaluated daily by mental health staff (*Id.*). She was subsequently released from crisis watch on February 26, 2017 (and was seen once a week by mental health staff thereafter) and then subsequently released from segregation (*Id.*). Defendants indicate that Plaintiff will be able to buy personal grooming items (like a shaving razor) provided it is consistent with prison safety policies (*Id.*). They also indicate that because Plaintiff is designated "vulnerable" and will need the consent of a potential cellmate, there are limitations on who can be celled with her (*Id.*).

At the hearing held on March 30, 2017, Plaintiff essentially testified that her mental health issues manifest, or get worse, when she is confined to segregation. The issues are exacerbated by being single-celled; however, it is also necessary for her to have an appropriate cellmate. Since being released from segregation, on March 8, 2017, Plaintiff testified that appropriate steps are

being taken to find her a suitable cellmate and that, as of the time of the hearing, she is in a "better place." She receives individual therapy every Sunday and group therapy may be a future option. Plaintiff is capable of receiving hormone replacement medication at her cell (i.e. she does not have to wait in a "pill line" where she was being harassed).

## CONCLUSIONS OF LAW

A request for a temporary restraining order and a preliminary injunction are analyzed under the same standard. Because Defendants have had notice of the Motion, the Court construes his request as one for a preliminary injunction. A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that Plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A CHARLES ALAN WRIGHT, ARTHUR R MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §2948 (5th ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). Plaintiff has the burden of demonstrating:

   1. a reasonable likelihood of success on the merits;
   2. no adequate remedy at law; and
   3. irreparable harm absent the injunction.

*Planned Parenthood v. Commissioner of Indiana State Dept. Health*, 699 F.3d 962, 972 (7th Cir. 2012). As to the first hurdle, the Court must determine whether "plaintiff has any likelihood of success – in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). Once Plaintiff has met his burden, the Court must weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest." *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "This equitable balancing proceeds on a sliding-scale analysis; the greater

the likelihood of success of the merits, the less heavily the balance of harms must tip in the moving party's favor." *Korte*, 735 F.3d at 665. In addition, the Prison Litigation Reform Act provides that a preliminary injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Finally, pursuant to Federal Rule of Civil Procedure 65(d)(2), a preliminary injunction would bind only the parties, their officers or agents, or persons in active concert with the parties or their agents.

At the hearing, this Court found that Plaintiff was not entitled to the drastic remedy of a preliminary injunction. Her request to be released from segregation was found to be moot and appropriate steps were being taken to find her an appropriate cellmate. Second, Plaintiff indicated to mental health staff that she was not suicidal. While she stated as much in order to retain her personal items, this Court is convinced that if Plaintiff indicated she was suicidal, appropriate steps would be taken (like crisis watch which was implemented as soon as Plaintiff was evaluated following the filing of the motion). Based on Plaintiff's demeanor and capacity to answer questions coherently and calmly, the Court is not convinced that she is in immediate danger. As such, Plaintiff will not suffer irreparable harm if an injunction is not issued.

## RECOMMENDATIONS

For the foregoing reasons, it is **RECOMMENDED** that the Motion for Temporary Restraining Order, construed as a Motion for Preliminary Injunction, filed by Plaintiff on February 23, 2017 (Doc. 94) be **DENIED** and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto. The

failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: May 24, 2017**

**DONALD G. WILKERSON**
**United States Magistrate Judge**