IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CARL TATE, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )  Case No. 3:16-cv-92-NJR-DGW |
| | ) |
| WEXFORD HEALTH SERVICES, INC., | )  **JURY TRIAL DEMANDED** |
| LOUIS SHICKER, MELVIN HINTON, | ) |
| JOHN BALDWIN, MARTINETTE | ) |
| DOUGLAS, VENERIO SANTOS, | ) |
| MARK AARON, MICHAEL DEMPSEY, | ) |
| REISTER, JEFF DENNISON, | ) |
| OFFICER BAILEY, JOHN DOE ONE, | ) |
| AND JOHN DOE TWO, | ) |
| | ) |
|    Defendants. | ) |

## PLAINTIFF CARL TATE'S SECOND AMENDED COMPLAINT

COMES NOW Plaintiff Carl Tate (hereinafter, "Plaintiff" or "Ms. Tate"), by and through her attorneys, for her Second Amended Complaint and so as to amend her *pro-se* First Amended Complaint (Docket No. 83) states as follows against Defendants Wexford Health Services, Inc., Louis Schicker, Melvin Hinton, John Baldwin, Martinette Douglas, Venerio Santos, Mark Aaron, Michael Dempsey, Reister, Warden Jeff Dennison, Officer Bailey, and John Does One and Two (collectively, the "Defendants"):

### Introduction

1. This action arises under Title 42 of the United States Code, Section 1983, and the Eighth Amendment and Fourteenth Amendment to the United States Constitution. Jurisdiction in this Court is proper pursuant to Title 28, United States Code, Sections 1331 and 1343. Through this case, Ms. Tate seeks damages and other relief as a result of: (i) Defendants' deliberate indifference to Ms. Tate's serious medical needs; (ii) Defendants' failure to hire and train

1

medical health staff members to treat inmates with gender dysphoria and to refer such inmates to outside specialists for sex reassignment therapy and surgery; (iii) the violation of the Americans with Disabilities Act by IDOC, as represented by Director Baldwin, when it refused to provide Ms. Tate with access to specific necessary medical services and programs; and (iv) Defendants' failure to protect Ms. Tate.

## Parties, Jurisdiction, and Venue

2. The facts giving rise to this Second Amended Complaint (the "Complaint") arose at Western Illinois Correctional Center in Sterling, Illinois; Centralia Correctional Center in Centralia, Illinois; and Shawnee Correctional Center in Vienna, Illinois (hereinafter, "Western," "Centralia" and "Shawnee," respectively). As a result, the Southern District of Illinois is the appropriate venue under 28 U.S.C. § 1391(b)(2) because this District is where the events giving rise to Plaintiff's claims occurred.

3. Plaintiff Carl Tate is a citizen of the United States currently incarcerated by the Illinois Department of Corrections ("IDOC"), residing at Shawnee in Vienna, Illinois.

4. Upon information and belief, Defendant Wexford Health Services, Inc. is a citizen of Illinois, and, at all times pertinent to this Complaint, the provider of medical care to offenders at within the custody of IDOC.

5. Upon information and belief, Defendant John Baldwin is an Illinois resident, and, at all times pertinent to this Complaint, is the Acting Director of IDOC.

6. Upon information and belief, Defendant Louis Shicker is an Illinois resident, and, at all times pertinent to this Complaint, was the Medical Director of IDOC.

7. Upon information and belief, Defendant Melvin Hinton is an Illinois resident, and, at all times pertinent to this Complaint, is the Acting Statewide Mental Health Supervisor for IDOC.

8. Upon information and belief, Defendant Martinette Douglas is an Illinois resident, and, at all times pertinent to this Complaint, was a health care provider employed by Wexford to provide medical services to offenders within the custody of IDOC.

9. Upon information and belief, Defendant Venerio Santos is an Illinois resident, and, at all times pertinent to this Complaint, was a health care provider employed by Wexford to provide medical services to offenders within the custody of IDOC.

10. Upon information and belief, Defendant Michael Dempsey is an Illinois resident, and, at all times pertinent to this Complaint, was a physician employed by IDOC to provide medical services to offenders within the custody of IDOC.

11. Upon information and belief, Defendant Mark Aaron is an Illinois resident, and, at all times pertinent to this Complaint, was the Prison Rape Elimination Act (PREA) coordinator at Centralia.

12. Upon information and belief, Defendant Jeff Dennison is an Illinois resident, and, at all times pertinent to this Complaint, is the Warden of Shawnee.

13. Upon information and belief, Defendant Bailey is an Illinois resident, and, at all times pertinent to this Complaint, was a correctional officer at Centralia.

14. Upon information and belief, Defendant John Doe One is an Illinois resident, and, at all times pertinent to this Complaint, was a correctional officer at Centralia.

15. Upon information and belief, Defendant John Doe Two is an Illinois resident, and, at all times pertinent to this Complaint, was a correctional officer at Centralia.

16. At all times material to this action, Defendants Shicker, Hinton, Baldwin, Douglas, Santos, Aaron, Dempsey, and Reister acted under color of the laws of the State of Illinois. Accordingly, these Defendants are named in this Complaint in their individual capacities.

17. At all times material to this action, all Defendants were also acting pursuant to Centralia and Shawnee's policy, custom or practice. Accordingly, the Defendants are named in this Complaint in their official capacities.

18. Plaintiff has exhausted all available administrative remedies.

## Facts Common to All Counts

19. Plaintiff is a transgender inmate who is anatomically male but identifies and presents as female.

20. Plaintiff has been housed in and continues to be housed in male correctional facilities.

21. Plaintiff has gender dysphoria.

22. Plaintiff was diagnosed with gender dysphoria in 2010 by Dr. Panabella at Illinois Rivers Correctional Center, in 2012 by Dr. Adkisson at Western, and in 2014 by Dr. Rodos at Western.

23. Plaintiff has also been diagnosed with Post-Traumatic Stress Disorder ("PTSD"), anxiety, and depression by numerous other mental health professionals while in the care of IDOC.

24. Plaintiff suffers from crying spells, hearing voices, self-mutilation, suicidal thoughts and attempted suicide.

25. Plaintiff has been subjected to brutal rape, physical assault and sexual assault while incarcerated, which has been the subject of other civil litigation.

26. Plaintiff suffers from Post-Traumatic Stress Disorder, anxiety, and depression, and suffers from crying spells, hearing of voices, mood swings, hypervigilence, panic attacks, nightmares, suicidal thoughts and attempted suicide.

27. Plaintiff attempted suicide while incarcerated on January 23, 2013, April 18, 2013, and on or about February 17, 2017.

28. Plaintiff experiences intensified crying spells, hearing of voices, mood swings, hypervigilence, panic attacks, nightmares, suicidal thoughts, anxiety, depression and PTSD when single-celled or when placed on "suicide watch" as practiced by IDOC and Wexford. "Suicide watch" involves isolating the inmate, denying her a cellmate, and subjecting her to conditions including but not limited to the following: isolation, denial of toothpaste, toothbrush, soap, showers, socks, and underwear; denial of phone calls including attorney/client calls, receipt and sending of mail; and denial of utensils so all food must be eating by hand. Plaintiff is also required to wear only a smock, leaving her virtually naked, and she must sleep on a dirty mattress on the floor. The correctional officers that guard those on "suicide watch" are not trained in mental health issues.

29. To be released from suicide watch, Plaintiff must convince staff that she is no longer suicidal, even if that is not the case. Thus, the only way for Plaintiff to take steps to minimize the symptoms described in Paragraph 25 is to forego appropriate treatment for her suicidal ideations.

30. Plaintiff is currently denied a cellmate and forced to spend many hours of the day in what is effectively solitary confinement. This solitary housing condition also worsens the symptoms listed in Paragraph 25.

31. Plaintiff is continuously harassed by corrections officers and other inmates. For example, Plaintiff is mocked and harassed when she receives hormone therapy pills given to her in the view of other inmates in pill line.

32. By way of further example, in February 2015 while in segregation in 5 Cell at Western, a corrections officer called Plaintiff "cocksucker", relating to her status as being transgender by writing it in black marker on the window.

33. Additionally, claims of harassment by correctional officers have been substantiated by the Warden, including an incident that occurred in or about July 2016 at Centralia where a corrections officer placed a Styrofoam drinking cup in the window that contained writing to the extent of "You think I'm gay, I know you're gay, you suck/love dick."

34. A report made against correctional officer Bailey at Centralia in September 2016 was also substantiated. Correctional officer Bailey repeatedly taunted and verbally harassed Plaintiff, calling Plaintiff "his bitch," saying "you're my girl," touching her inappropriately and asking her to strip for other inmates.

35. It is well established that treatment for gender dysphoria is outlined in the standard of care adopted by the Harry Benjamin International Gender Dysphoria Association, Inc., which includes a sequence of 1) hormone therapy, 2) real-life experience of living as a member of the gender identified with, and 3) sex-reassignment surgery.

36. Plaintiff has been denied appropriate treatment and accommodation for her gender dysphoria.

37. Among other things, she has been denied access to hair removal and is not permitted to wear makeup, bras or female undergarments.

38. The Defendants do not afford transgender inmates the real-life experience of living as a member of the gender identified with.

39. The Defendants do not allow transgender inmates to have sex-reassignment surgery while such inmates are incarcerated.

40. The Defendants are not trained or qualified in gender dysphoria and related mental health issues.

41. The Defendants fail to hire and train professionals qualified in gender dysphoria and related mental health issues.

42. Plaintiff has repeatedly requested to be seen by a physician who specializes in gender dysphoria for the purpose of undergoing sex-reassignment surgery and for treating her mental health issues related to gender dysphoria.

43. Specifically, while at Western in 2014, Plaintiff asked Defendant Douglas to be seen by a specialist in order to receive sex-reassignment surgery.

44. Defendant Douglas told Plaintiff that if she wanted sex-reassignment surgery, she should not have come to prison.

45. Defendant Douglas told Plaintiff that Wexford does not waste money on treatment such as hair removal and sex-reassignment surgery.

46. Defendant Douglas denied Plaintiff's requests for hair removal and to be seen by a specialist for the purpose of sex-reassignment surgery.

47. Defendant Douglas refused to see Plaintiff on a weekly basis, despite Plaintiff filing grievances regarding the same.

48. While at Centralia, Plaintiff asked Defendant Aaron that she be allowed to undergo sex-reassignment surgery.

49. Defendant Aaron told Plaintiff that Wexford and IDOC do not allow inmates to undergo sex-reassignment surgery.

50. Defendant Aaron refused to refer Plaintiff to an outside specialist.

51. On July 25, 2015, Emily Prater, a mental health staff member, referred Plaintiff to Dr. Rodos, a psychiatrist.

52. Dr. Rodos told Plaintiff he would send Plaintiff's request for sex-reassignment surgery to Defendant Santos, the medical director of the prison.

53. Dr. Rodos told Plaintiff he would speak to Defendant Aaron regarding Aaron's refusal to refer Plaintiff to an outside specialist.

54. On August 7, 2015, Dr. Rodos informed Plaintiff he had forwarded Plaintiff's request to outside specialists, including physicians at the University of Illinois at Springfield.

55. Plaintiff was seen by Defendant Santos in May, July and October 2015.

56. Plaintiff informed Defendant Santos that she was taking hormone therapy and was suffering from anxiety, depression, PTSD and other mental health issues.

57. Accordingly, Plaintiff asked Defendant Santos if she could be seen by a physician who is specialized in gender dysphoria, for the purposes of ultimately undergoing sex-reassignment surgery.

58. Defendant Santos told Plaintiff that IDOC does not pay for or allow such treatment and that she would have to wait until she is released from prison to undergo such treatment.

59. Pursant to IDOC procedure, Plaintiff filed numerous grievances regarding Defendants' deliberate indifference to her serious medical needs, the failure to hire and train appropriate medical staff, the failure to protect Plaintiff, and various other violations of Plaintiff's constitutional rights. See Grievances, attached hereto as Exhibits 1 through 10, dated January 16, 2014, January 23, 2014, August 8, 2014, December 28, 2014, January 31, 2015, March 16, 2015, April 20, 2015, April 22, 2015, May 26, 2015, and July 22, 2015. Plaintiff exhausted all appeals from these grievances.

60. Plaintiff has thus been given the "runaround" regarding the deliberate indifference to her serious medical needs, the failure to hire and train appropriate medical staff, the failure to protect Plaintiff, and various other violations of Plaintiff's constitutional rights. See Pavey v. Conley, 544 F.3d 739, 742 (7th Cir. 2008).

61. Plaintiff has repeatedly filled out the required sick leave forms requesting medical attention for her gender dysphoria and mental health issues. Notwithstanding her repeated requests, Plaintiff has yet to be seen by a medical doctor qualified and trained in gender dysphoria and related mental health issues.

## COUNT I

**Failure to Provide Medical Attention Against Defendants Wexford, Schicker, Hinton, Baldwin, Douglas, Santos, Aaron, Dempsey and Reister**
**(Violation of 42 U.S.C. § 1983, the Eighth Amendment)**

62. Plaintiff realleges and incorporates Paragraphs 1 through 61 as if fully set forth herein.

63. At all times relevant to the Complaint, the Defendants were acting under color of state law, by the use or misuse of their official positions. The Defendants were therefore acting in their individual capacities.

9

64. IDOC fails to provide inmates with appropriate medical attention. Defendant Baldwin is responsible for this policy, custom and/or practice.

65. Defendants Shicker, Hinton, Baldwin, Aaron, Dempsey and Reister's conduct described herein was pursuant to IDOC's policy, custom and/or practice of failing to provide inmates with appropriate medical attention. These Defendants were therefore also acting in their official capacities.

66. Wexford fails to provide inmates with appropriate medical attention. Defendants Wexford and Santos are responsible for this policy, custom and/or practice.

67. Defendants Wexford, Santos and Douglas's conduct described herein was pursuant to Wexford's policy, custom and/or practice of failing to provide inmates with appropriate medical attention. These Defendants were therefore also acting in their official capacities.

68. At all times relevant to the Complaint, Plaintiff suffered from and continues to suffer from gender dysphoria, anxiety, PTSD, depression, hearing voices, suicidal thoughts, attempted suicide, self-mutilation, crying spells, and panic attacks.

69. Plaintiff has repeatedly filled out the required sick leave forms and grievances seeking medical attention for these conditions. Plaintiff has not been seen by a medical doctor specialized in gender dysphoria and related mental health issues.

70. Plaintiff has not received adequate mental health treatment.

71. Plaintiff has a serious medical need to be seen by a medical doctor trained and qualified in gender dysphoria. Her conditions are debilitating and continuing in nature, and post a substantial risk of harm to the safety and wellbeing of Plaintiff. As the Warden of Shawnee and the operator of the prison system in Illinois, Defendants Dennison and IDOC through Defendant

Baldwin, respectively, are deliberately indifferent to Plaintiff's serious medical need. These Defendants know Plaintiff needs medical attention for conditions so obvious that a layperson would recognize that treatment is needed.

72. Furthermore, as trained doctors and health care professionals, Defendants Santos, Douglas, Shicker, Hinton, Aaron, Reister and Dempsey are deliberately indifferent to a serious medical need. These Defendants know Plaintiff needs medical attention for conditions so obvious that a layperson would recognize treatment is needed.

73. As a direct and proximate result of the Defendants acts and omissions, Plaintiff was actually substantially harmed. Plaintiff suffered and continues to suffer serious injury and conditions as a result of the conduct of the Defendants.

## COUNT II

### Failure to hire and train against Defendants Wexford and IDOC, through Defendant Baldwin
**(Violation of 42 U.S.C. § 1983 and the Fourteenth Amendment)**

74. Plaintiff realleges and incorporates Paragraphs 1 through 73 as if fully set forth herein.

75. Defendants Wexford's training program is not adequate to train mental health staff in treating gender dysphoria or handling transgender inmates.

76. Such failure to train is an official custom and/or policy of Wexford. Wexford is responsible for this custom and/or policy.

77. Wexford knew that more and/or different training was needed to treat transgender inmates and inmates with gender dysphoria, and/or that the need for such additional or different training was so obvious that the inadequacy was so likely to result in the violation of constitutional rights.

78. Wexford's conduct was pursuant to its official custom and/or policy to not adequately train its staff.

79. IDOC, through Defendant Baldwin, failed to hire or train mental health staff qualified in gender dysphoria and related transgender issues.

80. Such failure to hire is an official custom and/or policy of IDOC. Defendant Baldwin is responsible for this custom and/or policy.

81. IDOC, through Defendant Baldwin, knew that the need for hiring staff qualified in gender dysphoria and related transgender issues was so obvious that the inadequacy was so likely to result in the violation of constitutional rights.

82. IDOC's conduct was pursuant to its official custom and/or policy to not adequately hire staff.

83. Defendants Wexford and Baldwin's failure to provide adequate training and failure to hire qualified employees directly and proximately caused the violation of Plaintiff's constitutional rights. Plaintiff suffered and continues to suffer severe emotional and physical injuries.

## COUNT III

### Violation of Americans with Disabilities Act Against Defendant IDOC and Defendant Baldwin

84. Plaintiff realleges and incorporates Paragraphs 1 through 83 as if fully set forth herein.

85. Under Title II of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"), a public entity is prohibited from denying qualified, disabled individuals the opportunities to participate in the public entity's programs, services or activities because of such individuals disability. 42 U.S.C. § 12132; 29 USC § 794.

86. Plaintiff's mental health conditions described herein render her disabled.

87. Plaintiff's physical condition described herein also render her disabled.

88. Plaintiff has been denied access to medical service programs and activities at Western, Centralia and Shawnee due to her disabilities by Defendants IDOC and Baldwin.

89. As a direct and proximate result of the Defendants acts and omissions, Plaintiff was actually substantially harmed. Plaintiff suffered and continues to suffer serious injury and conditions as a result of the conduct of the Defendants.

## Count IV

### Failure to Protect against All Defendants
### (Violation of 42 U.S.C. § 1983 and the Fourteenth Amendment)

90. Plaintiff realleges and incorporates Paragraphs 1 through 89 as if fully set forth herein.

91. At all times relevant to the Complaint, Defendants were acting under color of state law, by the use and/or misuse of their official positions as Warden of Shawnee and correctional officers of the Illinois Department of Corrections, respectively.

92. Plaintiff's status as a transgender inmate creates a substantial risk of harm to Plaintiff.

93. As a result of Plaintiff's requests for protective housing, transfer, sex-reassignment surgery, and grievances regarding harassment and assault, Defendants knew that Plaintiff was at a substantial risk of harm.

94. Upon information and belief, IDOC used to maintain vulnerable wings at correctional facilities within the State of Illinois but no longer does so.

95. Defendants were deliberately indifferent to Plaintiff's substantial risk of harm, as evidenced by their refusal to take protective measures and their denial of sex-reassignment surgery.

96. Defendants failed to take reasonable measures to abate the substantial risk of harm to Plaintiff caused by assault and harassment by other inmates and correctional officers employed by IDOC.

97. As a direct and proximate result of the Defendants' acts and omissions, Plaintiff was actually harmed. Collectively, Defendants' acts and omissions allow for Plaintiff to be harassed and assaulted. Plaintiff suffered and continues to suffer serious injury as a result of the acts and omissions of the Defendants.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered in her favor and against Defendants, and for:

(a) Appropriate declaratory relief regarding the unlawful and unconstitutional acts and practices of Defendants;

(b) Appropriate equitable relief against all Defendants as allowed by 42 U.S.C. § 1983, including enjoining and permanently restraining Defendants from enforcing their unlawful and unconstitutional policies from committing the violations described in this Complaint, and directions to Defendants to take such affirmative action as is necessary to ensure the effects of the unconstitutional and unlawful practices are eliminated and do not continue to affect Plaintiff or others;

(c) Appropriate compensatory, punitive, and nominal damages to be determined at trial;

(d) Plaintiff's transfer from Shawnee Correctional Center to Graham Correctional Center in Hillsboro, Illinois, or Dixon Correctional Center in Dixon, Illinois, or another more appropriate correctional facility;

(e) An injunction directing that the Defendants provide Ms. Tate with consistent, continuous, appropriate, and adequate medical and mental health treatment for her PTSD, depression and gender dysphoria. At a minimum, that treatment shall include:

  i. Evaluation by an independent, outside psychiatrist trained in gender dysphoria issues, including those related to sex reassignment surgery;

  ii. Access to female clothing, undergarments, hygiene and grooming products, and any cosmetic products as may be allowed for her custody level;

  iii. Freedom from sexual and physical harassment and assault by other inmates and officers;

  iv. Medical and mental health care appropriate to Ms. Tate's sexual orientation and history of sexual assault in custody;

  v. Housing with females or other transgender inmates;

  vi. Staff training regarding transgender inmates; and

  vii. Sex reassignment surgery.

(f) An injunction directing that the Defendants be prohibited from single-celling or segregating Ms. Tate;

(g) The designation of vulnerable wings at correctional facilities within the State of Illinois and Plaintiff's placement in the same;

(h) An award of reasonable attorneys' fees and Plaintiff's costs expended on Plaintiff's behalf pursuant to 42 U.S.C. § 1988;

 (i) Prejudgment interest and any other interest allowed by law; and

 (j) Such other and further relief to which Plaintiff may show herself justly entitled.

## JURY DEMAND

Plaintiff respectfully requests and demands trial by jury on all issues so triable.

Dated: September 12, 2017    Respectfully submitted,

**BRYAN CAVE LLP**

/s/ Ambika Behal
Ambika Behal, #6312330
Darci F. Madden, #6271662
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63102
Tel: (314) 259-2000
Fax: (314) 259-2020
ambika.behal@bryancave.com
dfmadden@bryancave.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of September, 2017, I filed the foregoing with this Court's electronic filing system, giving notice to all counsel of record.

/s/ Ambika Behal