**Declaration of Dr. George R. Brown, MD, DFAPA**

I, Dr. George R. Brown, MD declare under penalty of perjury the following:

1. I am a medical doctor who is Board Certified in Psychiatry. I serve on the faculty of the East Tennessee State University Quillen College of Medicine, where I currently hold the position of Professor of Psychiatry and the Associate Chairman for Veterans Affairs. I also hold a teaching appointment related to my expertise with transgender healthcare and research at the University of North Texas, Texas College of Osteopathic Medicine, and a teaching and research position in psychiatry at the Mountain Home Veterans Affairs Medical Center. For over three decades, my research has focused principally on the study of transgender health. I have been involved in the clinical evaluation and treatment of patients with Gender Dysphoria for approximately thirty years. Further, since 1990, I have served on the World Professional Association for Transgender Health (WPATH) Committee to Revise the Standards of Care, and I was a coauthor of the current version of the Standards of Care, Version 7 (2011). I continue to serve as a Cochairman of the Institutionalized Persons Committee for WPATH, which involves coauthoring the revisions to the Standards of Care, Version 8, anticipated for 2020. Attached to this declaration as Exhibit 1 is my CV.

2. At the request of her counsel, I reviewed the medical records of Illinois Department of Corrections (IDOC) inmate Carl Tate, who I will refer to by her preferred name, Tay Tay, and with female pronouns. This is the standard convention for health care providers who follow the Standards of Care for transgender and gender non-conforming persons. This review included records from Menard Correctional Center, Pontiac Correctional Center, Stateville Correctional Center, Lawrence Correctional Center, Pinckneyville Correctional Center, Hill Correctional Center, Big Muddy River Correctional Center, Illinois River

1

Correctional Center, Western Illinois Correctional Center, Centralia Correctional Center, Shawnee Correctional Center, Dixon Correctional Center, Graham Correctional Center, and Danville Correctional Center, with the earliest records dated from 2002 and the most current progress note dated 7/3/19. I do not know if I have been afforded access to the complete record set from all facilities, and some hand-written records were illegible and/or copied poorly. With that caveat, I also conducted two private telephone interviews with Tay Tay of approximately thirty minutes each, and one conference call of 30 minutes duration. The purpose of these clinical interviews was to obtain additional information regarding Tay Tay's treatment, diagnoses, and current mental status examination. The phone interviews confirmed much of what was documented in the records I reviewed regarding both her medical condition and her reported experiences while incarcerated.

## SUMMARY OF CONCLUSIONS

3. As further explained below, given Tay Tay's conditions, there is no medical justification for continuing to house her in a men's prison. To the contrary, continued housing in a men's prison will seriously compromise Tay Tay's mental health and personal safety and prevent her from receiving adequate treatment for her Gender Dysphoria (GD). In a men's prison, she has been prevented from accessing even the basic necessities for social transition, a critical part of treatment for GD, whereas in a women's prison, she would have access to the same items as similarly situated female inmates.

4. Tay Tay has been diagnosed by IDOC clinicians with a number of conditions, including anxiety, depression, and posttraumatic stress disorder (PTSD). Multiple clinicians have consistently proffered these diagnoses over many years. As noted in the records as well as in the interview I conducted, Tay Tay frequently has symptoms of these conditions that have warranted

psychological treatment. She has suffered traumas at the hands of males at many points in her life, including, most recently, other inmates during her incarceration experience. Continuing to maintain her in the same environment that has been responsible for well-documented traumatic events is, most definitely, harmful to her mental health. She continues to be subjected to the same or similar traumatic events that resulted in these diagnoses in the first place. Housing her in a men's prison only guarantees that her mental health will deteriorate and that her diagnoses of PTSD will not be successfully treated in this setting.

5. To the extent that IDOC officials rely on the fact that Tay Tay has not yet had sex reassignment surgery (SRS) to justify her continued placement in a men's prison, this position conflicts with all reliable medical literature. The requirement for SRS is not mandatory for passport changes, name changes, or the use of gender appropriate facilities outside of prisons. Birth sex male inmates with Gender Dysphoria but without SRS have been transferred to female facilities. Furthermore, Tay Tay is sexually attracted only to males, not females. There is no medical or psychiatric justification for keeping her in a men's facility.

6. I hold the opinions stated above—and throughout this declaration—to a reasonable degree of medical certainty, and I reserve the right to amend those opinions or conclusions should additional information become available.

## BACKGROUND AND MEDICAL CONDITIONS

7. Tay Tay is a 40-year-old heterosexual transgender woman, assigned male at birth, and who is housed in a men's prison, Danville Correctional Center. Tay Tay reports that she began identifying as a female at the age of three. She began dressing as a female at the age of seven, but had to be careful due to extreme hostility in her community. Around the age of twelve, however, Tay Tay lived as female when outside her community. Tay Tay briefly took

unprescribed hormones at the age of fourteen but did not take a dose consistent enough to feminize her body to bring it into closer alignment with her female gender identity, but she found this to be a positive experience.

8. In 2010, Tay Tay was first diagnosed with Gender Dysphoria by an IDOC psychiatrist (previously known as Gender Identity Disorder). She has consistently been diagnosed with Gender Dysphoria (DSM 5, 302.85) by multiple clinicians over many years and through the present time. Based on her medical records and my interview with her, I have no reason to doubt the accuracy of that diagnosis. Her description of her symptoms, personal experience of her gender, and medical record information are all confirmatory of this diagnosis. Therefore, based on my personal interviews and records review, I concur with the current diagnosis of Gender Dysphoria (previously referred to as Gender Identity Disorder).

9. Tay Tay began cross-sex hormone treatment (CSH) at Western Illinois Correctional Center in late 2013. In October 2014, she began taking Estradiol and Spironolactone. The records are either incomplete or missing in terms of the dosing, and there are no records of any laboratory monitoring of this treatment, which is essential to successful and safe treatment. In May 2015, Tay Tay refused CSH citing concerns that the treatment was causing her to experience prediabetic symptoms. There are no laboratory assessments in the documentation I received to support this concern, and Tay Tay cannot recall getting blood drawn any more than once during her entire duration of treatment with CSH. Therefore, it appears that during the nearly year-and-a-half period of CSH, there was grossly inadequate and clinically substandard laboratory monitoring of this treatment. For example, unless there are records not available to me, there are no records of baseline laboratory assessments or regular monitoring of hormone levels and other relevant laboratory markers as recommended by all national and

international standards on the use of cross-sex hormones in transgender people (e.g. Endocrine Society guidelines, WPATH, UCSF, etc.). Laboratory monitoring of cross-sex hormone treatment is, in itself, inadequate monitoring even if done correctly. Patients should also be monitored physically and psychologically, especially during the onset of such treatments to help determine the adequacy of dosing in addition to the laboratory monitoring. There is scant evidence, if any, that these critical, standard of care, nonlaboratory monitors of cross-sex hormone treatment were accomplished by anyone. Given the total lack of monitoring, which is necessary to monitor and control for possible diabetic reactions to CSH, Tay Tay's decision to discontinue CSH upon experiencing prediabetic symptoms was reasonable, since she was not provided with enough medical information to make an informed decision. Tay Tay also received psychosocial supports as part of her treatment, as recommended and approved by the Gender Dysphoria Committee in late 2013 (specifically, individualized psychotherapy for GD and GD Group psychotherapy). Those medically necessary services have been discontinued as a result of her current housing at Danville Correctional Center and were not routinely provided over the past 6 years while continuing in IDOC custody.

10. My interview with Tay Tay and review of her records also supports the fact that she has the typical psychological and some typical physical changes associated with CSH in birth-sex males. However, treatment for Gender Dysphoria is not limited strictly to cross-sex hormone treatment. There is little to no evidence that Tay Tay has been allowed to socially transition and obtain access to the same canteen items that other women in IDOC have access to. According to her records, Tay Tay asked for and was denied a bra. She has never had access to female underwear or any other female canteen items.

11.     According to the medical records and my interview, Tay Tay is attracted exclusively to men. Before her incarceration, Tay Tay had sex with a woman, resulting in a son. But, Tay Tay described her relationship with this woman as a passing experience, rather than a real relationship and stated that she did not find the mother of her son physically or sexually attractive. It is very common in the developmental trajectory of transgender identity for sexual experimentation with both sexes in adolescence. Later in life, as an adult, a clear sexual attraction for one type of partner is the most common outcome. In this case, it is clear that Tay Tay is exclusively sexually attracted to adult men.

### TAY TAY'S HOUSING SITUATION'S EFFECT ON HER MENTAL HEALTH

12.     Currently, Tay Tay is housed in a medium-security prison. Over the course of her time in IDOC, she has been frequently single celled or placed in segregation for extended periods while prison officials find her an appropriate cellmate, given her status as vulnerable person. She is experiencing distress, anxiety, ongoing symptoms of posttraumatic stress disorder, and frequent depression. She reports that corrections officers have threatened her as well. She constantly feels unsafe and vulnerable—a condition that is aggravated when she is celled alone. She also reports near-daily harassment of a verbal nature and frequent threats of sexual or physical assault from male inmates, as well as actual sexual assault on multiple occasions during her incarceration. In her current facility, she is not able to present herself as female (consistent with her gender identity) as she did during her pre-incarceration life. Because of her facility placement, IDOC denies her access to the psychosocial supports that are necessary to treat Gender Dysphoria, for example access to the Transgender Support Group that she was able to access earlier in her incarceration. The only treatment the IDOC is currently providing to Tay Tay is individualized counseling, which is inadequate alone to treat Gender Dysphoria.

13. This lack of access to basic medically necessary services for the treatment of GD violates the standard of care for transgender inmates—limited counseling sessions are insufficient, even when provided on a consistent basis. Like many other psychiatric conditions, counseling alone is insufficient to treat GD in most patients with this diagnosis. Tay Tay is in substantial distress from her undertreated Gender Dysphoria, which is compounded by the reported conditions in the facility and the abuse and trauma she has survived while in IDOC custody. She has been housed, at one time or another, in virtually all male facilities that exist within IDOC, and she has experienced unsafe, harassing conditions at each of them. Tay Tay's symptoms of anxiety and depression are most likely associated with her primary diagnosis of Gender Dysphoria and, secondarily, related to her diagnosis of posttraumatic stress disorder. Her current and recent symptoms of PTSD are largely due to the traumatic experiences—including rape—which she has suffered at the hands of males in the all-male corrections environment.

14. Throughout her incarceration, Tay Tay has been persistently misgendered by correctional and medical staff. That is, she is repeatedly, persistently, and abusively called by male pronouns in spite of common knowledge by all staff that she is a transgender woman, with a female gender identity. Tay Tay's medical records primarily use male pronouns when referring to her, which is outside the medical and psychiatric standard of care for clinical work with transgender persons. This misgendering is harmful to her mental health because it humiliates and degrades Tay Tay on a regular basis. In Tay Tay's case, the use of male pronouns serves to further exacerbate her Gender Dysphoria, including symptoms of low self-esteem, thoughts of self-harm, anxiety, and depression.

15. Tay Tay is fearful of both the corrections officers and the other inmates, and she described to me a long list of abuses (physical, sexual, and verbal) that she has reportedly

suffered at the hands of the officers. With respect to the other inmates, she reports frequent verbal abuse, so extreme that she almost never attends meal service and is therefore forced to buy all her meals from commissary. This demonstrates that she is not thriving, only surviving, in her current housing situation.

      16.     In conclusion, I reiterate that there is no medical justification for Tay Tay's continued placement in a men's prison and that a continuation in her current placement will cause her more serious harm and put her at risk of suffering lifelong consequences—including but not limited to acts of self-harm, worsening of her posttraumatic stress disorder, and the other known consequences of undertreated Gender Dysphoria in the male corrections environment. She is currently not receiving adequate, medically necessary care for her serious medical condition, Gender Dysphoria, and the likelihood of improvement from her anxiety, depression, and posttraumatic-stress-disorder symptoms while being maintained in the environment that is responsible for the symptoms in the first place is exceedingly unlikely. She understandably does not feel safe transitioning in an environment where she has already been attacked and traumatized without undergoing transition, leaving her in a completely untenable position medically.

The opinions I express above are based on my knowledge and experience and were developed by analyzing the medical records that have been provided to me. I reserve the right to change or modify my opinions should additional evidence become available. Pursuant to 28 U.S.C. § 1746, I declare, certify, verify, and state on this day, under penalty of perjury that the forgoing is true and correct.

Date: 7/15/19

Signature _____
George R. Brown, MD, DFAPA